UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| NELSON IKEM, | ) |
| Plaintiff, | ) Civil Action No. 7:23-cv-131 |
| v. | ) |
| MONDELEZ INTERNATIONAL, INC., | ) By:  Michael F. Urbanski |
| | ) United States District Judge |
| Defendant. | ) |

## MEMORANDUM OPINION

This matter comes before the court on a motion to transfer venue and dismiss from defendant Mondelez International, Inc. ("Mondelez"), ECF No. 4. Mondelez argues that transfer of venue is appropriate as the relevant people and events are concentrated in the Eastern District of Virginia. Plaintiff Nelson Ikem ("Ikem") opposes this motion. ECF No. 8. Because the court **GRANTS** Mondelez's motion as to transfer to the Eastern District of Virginia, the court **DENIES as moot** the remainder of Mondelez's motion as to dismissal for failure to state a claim. ECF No. 4.

I.

According to the complaint, Ikem was born in Nigeria, is a naturalized United States citizen, and resides in Virginia. ECF No. 1, at ¶¶ 6–7. Ikem worked as a Production Associate at Mondelez's Richmond, Virginia manufacturing facility from 2005 through 2018. Id. at ¶¶ 8, 11, 25. He received "excellent performance evaluations" throughout this time. Id. at ¶ 26. In 2018, Ikem was promoted to a Front Line Leader supervising the Third Shift at the Richmond

facility. Id. at ¶¶ 27–28. Ikem continued as a supervisor with Mondelez until he was terminated in 2022.

Ikem's supervisor, Fabian Franco, first suspended Ikem for insubordination when Franco learned that Ikem had worked his previously scheduled shift. Id. at ¶¶ 33–37. Franco was "consistently and unfairly critical of" Ikem's performance and "attempted to pressure" Ikem to "accept a transfer to another area." Id. at ¶ 32. The day before his suspension, Ikem had called Mondelez's Human Relations ("HR") hotline to complain about discrimination on the basis of his race and national origin. Id. at ¶ 34.

Shortly thereafter, Ikem began the process of filing a discrimination Charge with the Equal Employment Opportunity Commission ("EEOC"). Id. at ¶¶ 38–40. Ikem told a fellow supervisor about his plan to file a discrimination Charge. Id. at ¶ 41. At some point, Ikem called Mondelez's HR department to "complain about his suspension and his perception he was being treated worse than his peers because of his national origin." Id. at ¶ 42.

After Ikem returned to work following his suspension, he met with Director of Operations and Assistant HR Manager Maurice Kersey. Id. During this meeting, Ikem agreed to Kersey's request that he "reset" his relationship with Mondelez and "forget this ever happened." Id. at ¶ 44.

Franco then transferred Ikem to another area within the Richmond facility because two employees, who Ikem did not supervise, had submitted complaints. Id. at ¶ 47. On or about April 1, 2022, Ikem discussed his suspension, the perceived discrimination against him, and the reports he had made internally and to the EEOC with an HR representative in Chicago. Id. at ¶ 48–51. This representative mentioned that Mondelez took the complaint seriously

because Ikem was the "'only African' working at the Richmond facility." Id. at ¶ 49. Another coworker in Richmond told Ikem that Ikem's "behavior was being interpreted as hostile or aggressive because he was African and his culture was causing his actions to be misinterpreted." Id. at ¶ 53.

Ikem was suspended for a second time following an incident in the Richmond facility. On or about April 26, 2022, Ikem unsuccessfully tried to catch the attention of one of his supervisee's by calling the employee's name three times at successively louder volumes. Id. at ¶ 54. When this effort failed, Ikem tapped the employee on the shoulder. Id. at ¶ 55. The employee appeared offended and yelled: "Speak louder next time. Don't touch me!" Id. at ¶ 56. Ikem reported the interaction to the shop steward, completed his shift, and went home. Id. at ¶¶ 58–59. The following day, while en route to work, Mondelez business unit manager Leo Brianezi called Ikem and directed him to return home because an employee claimed that Ikem had "grabbed" him during the prior day's shift. Id. at ¶¶ 60–61. Ikem awaited the results of the investigation while on unpaid suspension. Id. at ¶¶ 62–63.

On or about May 3, 2022, Ikem again filed a complaint through Mondelez's HR hotline. Id. at ¶ 64. On or about May 10, 2022, HR Manager Rose Albino and Franco called Ikem and asked: "Why do you think we are targeting you?" Id. at ¶ 65. During this same call, Ikem explained that he felt helpless and mentioned his upcoming EEOC intake interview. Id. at ¶ 66. On or about May 19, 2022, Ikem participated in a call with head of HR, who was "incredulous" that Ikem had tapped the employee on the shoulder. Id. at ¶ 70. On or about June 2, 2022, Ikem completed the EEOC intake interview and filed his Charge. Id. at ¶ 72.

That same day, an HR representative called Ikem and terminated him for breaking the company's code of conduct. Id. at ¶¶ 73–74.

## II.

Under Title VII of the Civil Rights Act of 1964, venue is appropriate (1) "in any judicial district in the State in which the unlawful employment practice is alleged to have been committed," (2) "in the judicial district in which the employment records relevant to such practice are maintained and administered," (3) "in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice," or (4) "if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office." 42 U.S.C. § 2000e-5(f)(3). Title VII's "specific venue provision displaces general venue provisions." Douglas v. Sentel Corp., No. 1:18-CV-1534, 2020 WL 2576183, at *3 (E.D. Va. May 20, 2020); See Harding v. Williams Property Co., 163 F.3d 598, 1998 WL 637414, at *2 n.5 (4th Cir.1998) (unpublished) ("Venue of a Title VII action is therefore 'circumscribed by the very statute that gives . . . the right to sue in the first place.' This specific circumscription overrides the general venue statute at 28 U.S.C. § 1391.") (internal citation omitted)

However, a district court may, "[f]or the convenience of parties and witnesses, in the interest of justice[,] [. . .] transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). Courts typically consider "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) the convenience of the parties; and (4) the interest of justice." Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs. Inc., 791 F.3d 436, 444 (4th Cir. 2015). The party

4

moving for transfer bears the burden of demonstrating that the balance of interests weighs in favor of transfer. See, e.g., Uretek, ICR Mid-Atlantic, Inc. v. Adams Robinson Enters., Inc., No. 3:16CV00004, 2017 WL 4171392, at *5 (W.D. Va. Sept. 20, 2017) (internal citations omitted).

In ruling on motions to transfer venue, courts must first determine the threshold issue of whether the lawsuit could have initially been filed in the court to which transfer is sought. 28 U.S.C. § 1404(a). See also Dickson Props., LLC v. Wells Fargo Bank, N.A., No. 7:16-cv-527, 2017 WL 3273380, at *2 (W.D. Va. Aug. 1, 2017) ("Whether to transfer venue therefore turns on two questions: (1) whether venue is proper in the proposed transferee district, and (2) whether considerations of justice and convenience justify the transfer." (emphasis added) (citing Koh v. Microtek Int'l, Inc., 250 F. Supp. 2d 627, 630 (E.D. Va. 2003)).

"The convenience of the witnesses is of considerable importance in determining whether a transfer of venue is appropriate under Section 1404(a)." Mullins v. Equifax Info. Servs., LLC, No. Civ. A. 3:05CV888, 2006 WL 1214024, at *7 (E.D. Va. Apr. 28, 2006). District courts accord greater consideration to the convenience of non-party witnesses, who, unlike party witnesses, are not presumed to be willing to testify in a forum which is a great distance from where they reside. Id.

### III.

Mondelez argues that the court should transfer this case to the Eastern District of Virginia, because that is where the alleged discrimination occurred and where the evidence and witnesses, including Ikem, are located. ECF No. 5, at 4. The court agrees that discretionary transfer to the Eastern District of Virginia is appropriate in this case.

Pursuant to 28 U.S.C. § 1404(a), a district court may "transfer any civil action to any other district or division where it might have been brought" for "the convenience of the parties and witnesses" and "in the interest of justice." This action could have initially been brought in the Eastern District of Virginia under Title VII's venue provision, as the Eastern District is (1) in Virginia, the state in which the unlawful employment practice allegedly occurred, (2) the judicial district "in which the employment records" relevant to this matter are "maintained and administered" and (3) the judicial district in which Ikem "would have worked but for the alleged unlawful employment practice." 42 U.S.C. § 2000e-5(f)(3).

Once this threshold matter is met, courts generally turn to the following four factors: "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) the convenience of the parties; and (4) the interest of justice." Trs. of the Plumbers & Pipefitters Nat'l Pension Fund, 791 F.3d at 444.

Ikem's decision to file his case in the Western District of Virginia is the only factor that favors denial of the motion to transfer. "As a general rule, a plaintiff's "choice of venue is entitled to substantial weight in determining whether transfer is appropriate." Id. However, "the weight a court will give to a plaintiff's choice 'varies in proportion to the connection between the forum and the cause of action.'" Agilent Techs., Inc. v. Micromuse, Inc., 316 F. Supp. 2d 322, 326 (E.D. Va. 2004) (quoting GTE Wireless, Inc. v. Qualcomm, Inc., 71 F.Supp.2d 517, 519 (E.D.Va.1999)); see also Koh v. Microtek Int'l, Inc., 250 F. Supp. 2d 627, 633 (E.D. Va. 2003) ("[A] plaintiff's chosen venue is not given such substantial weight when the plaintiff selects a forum other than its home forum and the claims bear little or no relation to the chosen forum."). The only connection between this case and the Western District of

6

Virginia is the location of Ikem's counsel. As the location of counsel "is not entitled to deference in a determination whether the Court should transfer venue," this factor should be given "very slight weight." Acterna, L.L.C. v. Adtech, Inc., 129 F. Supp. 2d 936, 938 (E.D. Va. 2001).

The second and third considerations—witness convenience and access and convenience to the parties—favor transfer to the Eastern District of Virginia. Mondelez's facility is in Richmond, many of the witnesses and supervisors—as well as Ikem himself—live in and around Richmond, and all the relevant employment documents are stored in Richmond. Ikem argues that the distance between Roanoke and Richmond is negligible, especially as he has agreed to hold all depositions in Richmond and most evidence will be digitally produced. ECF No. 8, at 2–3. However, should this case go to trial, the distance between Richmond and Roanoke would burden witnesses forced to travel across the state. See Nofsinger v. Virginia Commonwealth Univ., No. 7:12CV00030, 2012 WL 1058338, at * 2 (W.D. Va. Mar. 28, 2012) (transferring a case from the Roanoke Division of the Western District of Virginia to the Richmond Division of the Eastern District of Virginia as it was more convenient to hear a case in the District where nearly all events occurred and defendants were located).

Finally, the interest of justice favors transferring this case to the Eastern District of Virginia. To be sure, judges in the Eastern and Western Districts are equally well-equipped to determine issues of law in this case. However, justice is served by permitting a jury drawn from the Eastern District of Virginia to decide issues of fact as to employment discrimination alleged to have occurred in that district. See Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 509 (1947) ("There is a local interest in having localized controversies decided at home.").

7

## IV.

For the aforementioned reasons, the court **GRANTS in part** Mondelez's motion as to the transfer of venue pursuant to 28 U.S.C. § 1404(a) and **DENIES as moot** the portion of Mondelez's motion seeking dismissal for failure to state a claim. ECF No. 4.

Entered: May 8, 2023

Michael F. Urbanski
Chief United States District Judge